**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| COURTNEY LENO, | Civil Action |
| Plaintiff, | |
| v. | Case No.: |
| RIDER UNIVERSITY and CHERYL WHITNEY, | |
| Defendant(s). | COMPLAINT; DEMAND FOR JURY TRIAL; DESIGNATION OF TRIAL COUNSEL; DEMAND FOR DAMAGES; CERTIFICATION |

By way of Complaint through the undersigned attorneys, Plaintiff Courtney Leno hereby states the following:

**PARTIES**

1. Plaintiff Courtney Leno (hereinafter referred to as "Plaintiff Leno") resides in Brick Township, in Ocean County, State of New Jersey 08723.

2. Defendant Rider University (hereinafter referred to as "Defendant Rider") is located at Lawrence Township, in Mercer County, State of New Jersey 08648 and is a private undergraduate College of Business, Liberal Arts and Sciences, and Education and Human Services of the New Jersey State system of higher education.

3. At all material times Defendant Cheryl Whitney (hereinafter referred to as "Defendant Whitney") was and, to the extent of

Plaintiff's belief and knowledge, still is an adjunct professor in the Department of Performing Arts at Defendant Rider University and, based on further information and belief, is a resident of the State of New Jersey.

## JURISDICTION AND VENUE

4.  This Court has jurisdiction of Plaintiff's Federal Law claims pursuant to 28 U.S.C. §1331, as this case involves questions of Federal Law, to wit, the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101, *et seq.*).

5.  This Court has supplemental jurisdiction over the related State Law claims pursuant to 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy under Article III of the United States Constitution. Plaintiff's State Law claims share all common operative facts with her Federal Law claims, and the parties are identical. Resolving Plaintiff's Federal and State claims in a single action serves the interests of judicial economy, convenience, consistency, and fairness to the parties.

6.  All parties (including the Defendants) are domiciled and/or conduct substantial business/operations in the State of New Jersey. Moreover, the subject incident which gave rise to the violations occurred in the State of New Jersey, rendering the District of New Jersey an appropriate venue pursuant to 28 U.S.C. §1391.

7.  Venue is proper in and Defendants are subject to the personal

jurisdiction of this Court because Defendants maintain facilities and business operations in this District pursuant to 28 U.S.C. §1391(b).

## FACTS COMMON TO ALL COUNTS

8.   Plaintiff Leno attended Rider University from 2023 to 2024, where she attended dance classes taught by Defendant Whitney.

9.   Plaintiff Leno has a medical condition called dyspraxia, sometimes called apraxia. Dyspraxia is a neurodevelopmental condition impacting speech and movement, characterized by difficulty with or inability to make certain voluntary muscle movements. Dyspraxia can also affect a person's speech patterns, co-ordination, and facial movements.

10.  Dyspraxia is a neurological, developmental disorder that is often confused with personality disorders and/or other forms of mental illness; however, dyspraxia does not affect the intelligence, cognitive ability, or mental state of the person with the condition.

11.  Apraxia has been recognized as a disability under Federal Law. See Moubry ex rel. Moubry v. Independent School Dist. 696, F.Supp 2d 1086, 1090 (D. Minn. 1998) (accepting without discussion that the plaintiff's "verbal apraxia" constituted a disability for purposes of the Individuals with Disabilities Education Act (20 U.S.C. §1400, et seq.).

12. In connection with her matriculation to Defendant Ryder, Plaintiff disclosed her dyspraxia to school staff.

13. Plaintiff Leno attended a dance class taught by Defendant Whitney during spring semester 2024.

14. Defendant Whitney was aware that Plaintiff suffers from dyspraxia. Plaintiff knows this because Defendant Whitney sometimes yelled "Dyspraxia!" at her in front of the entire class while she performed.

15. Defendant Whitney would also diminish Plaintiff Leno's previous dance training, and even once told her to go back to beginner's ballet lessons.

16. Plaintiff Leno would experience this harassment at the hands of her professor at least once a week, if not more often.

17. After reviewing her preliminary grades, Plaintiff Leno noticed that all of her assignments in Defendant Whitney's dance class had been marked as a zero despite the assignments being completed.

18. Plaintiff Leno decided to speak with the head of the Department of Performing Arts due to the low grades she was receiving from Defendant Whitney. Plaintiff also mentioned that Defendant Whitney had needless drawn attention to her disability.

19. In response to Plaintiff's complaint to the Department of Performing Arts, Defendant Whitney explained that the low grades were specifically due to her dyspraxia.

20. Plaintiff Leno attempted to appeal the final grade that she received in Defendant Whitney's class, but she did not receive credit such

that her only option was to retake the class.

21. During this time, Plaintiff Leno was referred by agents of Defendant Ryder to Dr. Jill Syletski for a mental health evaluation, which resulted in the school advising her to seek mental health treatment from the Rider University counselling center. Plaintiff Leno denied needing any form of mental health treatment, and posits that the mental health evaluation was entirely unnecessary.

22. Plaintiff Leno was also in the recruitment process to join the Army. During this time, upon information and belief, Plaintiff Leno avers that a staff member from Rider spoke with the Army recruiting office and disclosed Plaintiff Leno's medical information without her knowledge or consent.

23. On June 25, 2024, Plaintiff Leno received a letter from Rider University stating that they were placing Plaintiff Leno on emergency removal from campus, effective immediately. (Attached hereto as **EXHIBIT A**)

24. This letter states that Defendant Rider University came to this decision after "carefully reviewing information received from the Counseling Center and recent interactions you have had with Rider University Administrators and reports of multiple disruptions on campus […]" Rider University further stated to Plaintiff Leno in the June 25, 2024 correspondence that the implementation of the emergency removal is "a measure for your well-being and not a punitive action."

25.  Notwithstanding the boilerplate disclaimer of the letter, Plaintiff took Defendant Rider's action to be not only punitive, but in retaliation for her complaints about her treatment by Defendant Whitney.

26.  In this letter it is also stated that a meeting will be held in order for a panel to determine if there is a reasonable basis to conclude that there is a direct threat to health and safety of others.

27.  On July 17, 2024, Plaintiff Leno received a second letter from Defendant Rider University explaining the panel's decision to extend the emergency removal due to what they cite as Plaintiff Leno's actions prior to and during the meeting. Christine Mehlhorn, Dean of Students at Defendant Rider University who authored both correspondences, also alleged that Plaintiff Leno behavior would cause continued disruption to Rider University's learning environment. Christine Melhorn also advised Plaintiff Leno to seek medical guidance and support for her mental health. (Attached hereto as **EXHIBIT B**)

28.  To make matters worse for Plaintiff Leno, the second correspondence states that the emergency removal is to remain in place indefinitely, and further threatened that "Without such advance written permission [of Christine Melhorn], you will be subject to arrest and prosecution for trespassing and/or harassment if seen on campus at any time for any reason or if you contact anyone at any

time for any reason. This limitation takes effect immediately and remains in effect indefinitely."

29.  Plaintiff Leno states that she has been in contact with the Office of Disability, but Rider University does not offer services for students with dyspraxia.

30.  As a result of these acts of discrimination and retaliation, Plaintiff's tuition money has gone to waste, leaving her with nothing to show for her time at Defendant Rider.

31.  Further, Plaintiff has suffered emotional distress and damage to her reputation from both the initial discrimination by Defendant Whitney and the institutional retaliation by Defendant Rider in trespassing her from campus after she reported Defendant Whitney to the department head.

## COUNT ONE
### VIOLATION OF AMERICANS WITH DISABILITIES ACT
(42 U.S.C. § 12101, *et seq.*)
(Title III Discrimination in Public Accommodation)
AS TO DEFENDANT RIDER UNIVERSITY

32.  Plaintiff repeat and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

33.  Defendants discriminated against Plaintiff Leno by treating her differently from other students because of her disability.

34.  Specifically, Defendant Whitney openly mocked Plaintiff Leno by referring to her disability (dyspraxia) as she was performing for her dance class.

35. Moreover, Defendant Whitney express stated that her reason for giving failing grades to Plaintiff Leno was due to her disability.

36. Moreover, following Plaintiff Leno appealing her final grades in Defendant Whitney's class specifically due to Defendant Whitney's statement, Plaintiff Leno did not receive credit for Defendant Whitney's class and her only option was to retake the class.

37. Plaintiff Leno's disability was the determining factor and/or a motivating factor in Defendants' actions toward her.

38. Pursuant to 42 U.S.C. § 12181 Plaintiff Leno had the right to full and equal enjoyment of the goods, services, facilities, privileges, advantages, and/or accommodations offered by Rider University.

39. Defendant Rider University is a private entity providing a public accommodation as defined in 42 U.S.C. § 12181(7)(J).

40. In view of the open and notorious nature of the discrimination suffered by Plaintiff, Plaintiff avers that such discrimination will continue at Defendant Rider unless and until the staff of Defendant Rider receive appropriate training about neurodevelopmental disabilities.

   **WHEREFORE**, Plaintiff hereby demands equitable relief compelling Defendant Rider to train its staff about dyspraxia, apraxia and other similar neurodevelopmental conditions as they pertain to ADA protections and directing that an appropriate and non-discriminatory grade be entered for Plaintiff in Defendant Whitney's dance class, as well as cost of suit, attorney's fees and

such other relied as the Court may deem proper.

## COUNT TWO
### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
(42 U.S.C. § 12101, *et seq.*)
(Title V Retaliation)
### AS TO DEFENDANT RIDER UNIVERSITY ONLY

41. Plaintiff Leno repeats and reiterates all of the allegations contained in the above Counts and/or paragraphs as if set forth at length herein.

42. Under 42 U.S.C. § 12203, Plaintiff had a right to enjoy the benefits of an education at Defendant Rider University notwithstanding her report to administration about Defendant Whitney's discrimination.

43. Despite this clearly established right, Defendant Rider retaliated against Plaintiff by having her removed from campus when they should have instead disciplined Defendant Whitney.

44. Plaintiff's report of Defendant Whitney's discrimination was the determining factor and/or a motivating factor in Defendant Rider's decision to remove Plaintiff from campus.

45. As Plaintiff remains barred from the campus of Defendant Rider University to this day, the deprivation of rights she suffered is continuous and ongoing.

**WHEREFORE,** Plaintiff hereby demands equitable relief in the form of reinstatement as a student at Defendant Rider University in the same good standing she enjoyed before she reported Defendant Whitney's discrimination, as well as cost of suit, attorney's fees and such other relied as the Court may deem proper.

## COUNT THREE
### VIOLATION OF THE REHABILITATION ACT
#### (29 U.S.C. § 720, *et seq.*)
#### (Disability Discrimination by Federal Funds Recipient)
#### AS TO DEFENDANT RIDER UNIVERSITY ONLY

46.  Plaintiff Leno repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

47.  Defendant Rider University, as an accredited four-year university, receives federal funding in connection with the Free Application for Federal Student Aid, or FAFSA.

48.  As a result of such funding, Defendant Rider University is subject to the Rehabilitation Act through 29 U.S.C. § 794.

     **WHEREFORE**, Plaintiff hereby demands Judgment against Defendant for compensatory damages, costs of suit, attorneys' fees and such other relief as the Court may deem proper.

## COUNT FOUR
### VIOLATION OF THE NEW JERSEY LAW AGAINST DISCRIMINATION
#### (N.J.S.A. 10:5-1, *et seq.*)
#### (Disability Discrimination, Retaliation, Aiding and Abetting)
#### AS TO ALL DEFENDANTS

49.  Plaintiff Leno repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

50.  Defendant Rider University bears liability for disability discrimination based on its responsibility for the acts of Defendant Whitney in creating a hostile educational environment for Plaintiff

and in discriminating against Plaintiff in educational decisions related to her grade.

51.  Defendant Rider University also bears liability for the actions of its administrators who retaliated against Plaintiff by having her removed from campus in the wake of her complaint about the discrimination she suffered.

52.  Defendant Whitney aided and abetted her employer by directly harassing and discriminating against Plaintiff based on her disability.

53.  As a direct, legal, and proximate result of the discrimination, Plaintiff Leno has sustained, and will continue to sustain, psychological damages to be proven at trial. As a result of Defendants' actions, Plaintiff has suffered emotional distress, resulting in damages in an amount to be proven at trial.

54.  Defendants' unlawful actions and were intentional, willful, malicious, and/or done with reckless disregarded to Plaintiff Leno's right to be free from discrimination based on disability.

   **WHEREFORE,** Plaintiff hereby demands Judgement against Defendants for compensatory and punitive Damages, interest, costs of suit, mandatory attorneys' fees and such other relief as the Court may deem proper.

**COUNT FIVE**
**INVASION OF PRIVACY**
**AS TO ALL DEFENDANTS**

55. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

56. Plaintiff possessed a reasonable expectation of privacy with respect to her confidential medical information while attending Rider University.

57. Defendants violated this reasonable expectation of privacy by publishing their knowledge of Plaintiff's disability without Plaintiff's permission.

58. Specifically, Defendant Whitney, acting within the scope of her employment at Defendant Rider University, taunted and harassed Plaintiff with reference to Plaintiff's disability publicly and in a way that was clearly audible to Plaintiff's classmates.

59. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with

engaging in her full normal daily activities.  Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

60. All defendants are responsible for Plaintiff's invasion of privacy. All defendants acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by allowing the invasion of the plaintiff's privacy.

**WHEREFORE**, Plaintiff hereby demands judgment against Defendants for compensatory and punitive damages, interest, costs of suit, attorneys' fees and such other relief as the Court or Jury may deem proper.

## JURY DEMAND

Plaintiff hereby demands a Trial by a Jury on all of the issues contained herein subject to such trial.

FUGGI LAW FIRM, P.C.

**/s/Robert R. Fuggi, Jr., Esq.**
ROBERT R. FUGGI JR., ESQ.

Dated: 02/14/2025

## DESIGNATION OF TRIAL COUNSEL

ROBERT R. FUGGI, JR., ESQ., is hereby designated as trial counsel in this matter.

FUGGI LAW FIRM, P.C.

**/s/Robert R. Fuggi, Jr., Esq.**
ROBERT R. FUGGI, JR., ESQ.

Dated: 02/14/2025

## DEMAND FOR DAMAGES

Plaintiff hereby demands damages from Defendants in an amount to be determined at the time of trial.

FUGGI LAW FIRM, P.C.

**/s/Robert R. Fuggi, Jr., Esq.**
ROBERT R. FUGGI JR., ESQ.

Dated: 02/14/2025

**CERTIFICATION**

Pursuant to Local Rule 11.2, it is hereby certified that the matter in controversy is not the subject of any other action pending in any Court or Arbitration proceeding and Plaintiff does not contemplate any other actions or Arbitration proceeding.

I certify that the foregoing statements made by me are true and correct to the best of my knowledge and information. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishments.

FUGGI LAW FIRM P.C.

**/s/Robert R. Fuggi, Jr., Esq.**
ROBERT R. FUGGI JR., ESQ

Dated: 02/14/2025